For the appellant is David Shapiro, UESA. For the appellee is Thomas Dicciani. Is that pronounced correctly? Good guess. Okay. So, Mr. Shapiro, you may proceed. Good afternoon, Your Honors. May it please the Court. Counsel. Counsel. The defendant's bad faith conduct and concealment played a significant role in causing the prosecution and the wrongful conviction of Alan Beaman. He is entitled to a trial. Causation is an issue for trial under the Supreme Court's significant role test, because Alan could not have been indicted without an investigation and a police file curated in bad faith to frame him. The defendant's deprived the prosecutor of the tools to exercise his independent judgment by failing to conduct a good faith investigation. A decision to indict predicated on a bad faith investigation is not independence, because as the Supreme Court stated in paragraph 43, it is the recognized practice that the state's attorney sensibly defers to the investigative duties of the police. There's a lot that's going on in this case, a lot of discussion, lots of briefing, and I want to ask some questions so as to help my understanding of what the issues are and how it works. First, based upon what the Supreme Court said in its earlier decision in this case, that we're now thinking on remand, is my understanding correct that the plaintiff must prove the absence of probable cause for this malicious prosecution? That is an element of the tort. That's, of course, not the tax non-summary judgment. Oh, that's the element of the tort. That is the element of the tort, yes. However much the police were actively involved with the prosecutors in this case, Renard and Sook, it was ultimately their decision whether to file charge, wasn't it? It was their official decision, as it always is. It was not an independent decision. It's their call. They made the decision whether to make that decision. For purposes of this case, is our focus, should our focus be on when Sook and Renard decided they were going to charge the defendant as being that point in time when either it was handled properly or it wasn't. That is, you're saying this was improper, and that's the focus at that point in time, isn't it? When they said, we're going to charge him, let's arrest him? If I'm understanding the question properly, what the Supreme Court is saying is that the entire investigation, including bad faith misconduct in the investigation, and the manner in which the investigation is conducted— I'm not asking a role. I'm not answering my question. Sorry, I misunderstand the question. Let me be more clear. By saying that's the point in time, that's because things that happened thereafter and things learned thereafter would not affect the determination of whether there was probable cause when they charged him to do so. Isn't that right? You're talking exclusively about—let me differentiate as to the elements. As to the commencement or continuance element, it is commencement or continuance. That's been the standard for— I'm talking about the probable cause. I'm talking about the absence of probable cause for such a proceeding. The question is, was there probable cause for proceeding, and at what point does that have to be determined? It seems to me it's determined when prosecutors actually file charges. Not entirely. It can certainly dissipate based on the post-indictment investigation. What case stands for the proposition that post-indictment, post-charging matters can dissipate the existence, if it exists at that point, of probable cause to so act? May I refer to an unpublished decision that's not in the brief? No. Okay. But there's nothing cited in the brief. There's nothing—I'm familiar. And as a matter of fact, just as a matter of logic, if the question is, were they charged him with a probable cause to do so, we're frozen in time as a matter of logic, aren't we? For instance, if they learn about an alibi later or other evidence later that would diminish the value of the evidence they heard up to that point, how would that retrospectively diminish the probable cause if they had it to file a charge when they did? Because it dissipates the basis for the indictment and requires— How does that affect the legitimacy of the determination they had probable cause to file when they filed? It does not affect the legitimacy of the determination to file when they filed. Well, the absence of probable cause for such a proceeding is the absence of probable cause for such a proceeding at the time it's filed. Isn't that correct? I think I've stated my position on it. May I refer to why there was not probable cause at that particular time? No. I want to make sure if there's a logical claim you have—I want to hear it now—as to why anything that happened after they made the determination that they had probable cause to file, any information, diminishes what they knew at the time. How does that work? It seems to me either they had probable cause to file or they didn't when they filed and nothing that happened thereafter could change it. Why isn't that the case? Our contention is that if it becomes clear, based on what the investigator does after the indictment, that there is no probable cause, that it has been dissipated and that's not brought forward, that that is itself—it affects the continuance of the prosecution and it's relevant. It would be relevant in the sense that the prosecutor, upon learning this, should then dismiss the case? Is that what you would be suggesting? Yes. But that's not the claim here. The claim here is the absence of probable cause at the time is an element of malicious prosecution. The claim—the principal claim—is that there was no probable cause at the time of the indictment. That is our principal one. So let me change it. If, in fact, we conclude that there was probable cause at the time of the charging, this case is over, isn't it? No. For the reasons that I've said. Well, what—I'm still waiting for the reason that the later discovered evidence would diminish the probable cause at the time the charge was filed. I don't see how that logically follows. It doesn't diminish the basis at the time of charging. It is a tort based on commencement or continuance, and so if it's an ongoing prosecution, the dissipation of probable cause, while that decision is being made to continue the prosecution, is relevant. But it's far from our principal evidence of— No, no, no. The absence of probable cause for such proceedings is element three quoted by the Supreme Court. You're not telling me that that really means the absence of probable cause for such proceedings and continuing throughout those proceedings, as opposed to my understanding of it, the absence of probable cause for such proceedings at the time the charge was filed. Well, I'm reading it as the proceeding, which is exactly what the opinion says, and as I think the question recognizes. So it's not at the time the charge was filed. This is an ongoing assessment of has probable cause dissipated. If a prosecutor, because of after-discovered evidence, has lesser confidence in the prosecution, so what? That's a discretionary call in the sense that there was probable cause, arguably. Later I find out, if I'm a prosecutor, that a witness is going to waffle on me. That lessens my confidence, perhaps, but I still have a degree of confidence in the probable cause. I have a degree of confidence in continuing to investigate and continuing to go forward. Right, and in Justice Steinman's question, I believe that refers to—what I'm saying is if the probable cause dissipates, if you don't have that reasonable confidence. Why does it erase it? The probable cause is based upon multifarious factors. They're not all erased because of—unless somebody confesses. Oh, of course not. Well, you said diminished or what? To be clear, if probable cause is dissipated, if there is no longer probable cause— Dissipate, you mean by that gone? Yes. Okay, you don't mean by the evidence is not as strong? Of course not. No, I don't mean that. But the principal point is that we're entitled on probable cause to all of the inferences to be drawn in our favor. The Supreme Court is crystal clear about that on summary judgment. And let's discuss what those inferences were. Let's talk about them at the time of the charge, if that's the focus. One inference is that the motive had completely dissipated, and Allen didn't have a motive. As the Supreme Court recognized in 2008, he considered the relationship over as of July 25, 1993, a month before the murder. And all of those who encountered him in the month that he was at Rockford prior to the murder said that he was over it, he was dating someone else, it was no longer an issue. So that's the first thing. But this is an argument at trial on whether the evidence would be sufficient to convict. When the prosecutor is determining is the evidence sufficient to bring a charge, the prosecutor is not required to look at it in the light most favorable to the defendant, is he? He is—in a summary judgment case— No, I'm not talking about a summary judgment case. I'm going back to the decision to file a charge. There was a probable cause to do so. And based upon all the evidence the prosecutor knew at that time, the decision is—he calls for the prosecutor's exercise of judgment. And in exercising his judgment, the prosecutor at that moment in time is not under any obligation to view the evidence in the light most favorable to the defendant, is he? The jury—at that time, no, but that is not the inquiry in this case because this is a summary judgment case. And in a summary judgment case, we're entitled to the inferences to be drawn in our favor. It is different. It is not the same as an assessment of probable cause in the context of, say, a suppression hearing or a decision to— because of the fact that this is a civil case on a summary judgment posture where we are entitled to the inferences to be drawn in our favor. Another inference that a reasonable juror could draw is that, of course, John Murray is a far more obvious suspect here and far more likely to have committed it. The crime looked like a sexual assault. He had a motive because he wanted to go back to having sex with the victim. The crime seemed—looked like something that had been executed by someone of considerable size and power. With regard to John Murray in particular, you discuss him as an alternative suspect a lot in your brief. With regard to what the police knew about him and information they shared with the prosecutors, correct me if I'm wrong, it seems to me that they shared everything with the prosecutors before the charge was filed with the sole exception of the failure of Murray to take the lie detector test. Is that correct? Yes, that's correct. So Suk and Raynard had all that information that you've now cited when they decided to charge Beeman instead of Murray. They had that other information about Murray. This is not just a concealment case. I want to be very clear about this. This is not just a Brady case on the commencement or continuance issue. There are five separate bases for commencement or continuance in the Supreme Court opinion. Concealment is just one of them. Malicious or wrongful conduct that is instrumental in the prosecution is not— What did the cops not reveal other than the lie detector—favorite thing, lie detector? Again, it is not—I suppose the answer is it's the lie detector test that we're talking about what was revealed. But we are not just talking about what was revealed. What else did they fail to reveal to the prosecutor? I said that they did not fail to reveal something else. What I am saying is that there was malicious conduct, not just concealment. It is broader than that. The Supreme Court specifically said there are five things. One of them is concealment. You don't need concealment. We have concealment because of the polygraph. But the point is the Illinois Supreme Court said that the prosecutor necessarily defers to the investigative duties of the police. And if an investigation is so beset with malice and not investigating— Well, it's interesting. You use that word a lot and talk about bias and bad faith. But I'm not clear what the evidence is of the malice and bad faith in this case on behalf of the prosecutors. What is it? You mean on behalf of the police officers? Yes, thank you. On behalf of the police officers. On behalf of the police officers. So here are some examples. One example, the Friesmeier's police report, nearly 60-page detailed report, contains 13 time trials that Friesmeier used as inculpatory. The trial that he performed that is exculpatory, that supports Allen's motive, is not in the police report. Could a rational juror look at that and say that that was a malicious omission, one made in bad faith? Of course. Perhaps other— Did he reveal that information to Simpton Reiner? He revealed it ultimately in the grand jury and concealed it again in the trial. But again, it's not just about what was revealed or not revealed. It is about the fact that if—that it points to the overall state of mind of malice with regard to the investigation, which was the original question that I'm trying to respond to, right? Or one could—same thing about the disappearance of the Murray Polygraph report. You could attach an innocent explanation to it as a juror, or you could infer as the federal court recognized that it was intentional concealment. There's Friesmeier's blinding look for the grand jury. He told the grand jury that there was no one, no alternative suspect with any conceivable motive to have committed the murder anywhere in the world. He didn't say that. Sure he did. May I—I'll quote it directly. What did he say when Suk asked him about it? Yes. In his words. Right. The question is, other than Mr. Beeman, were you able in the course of your investigation to locate any other person anywhere who had any conceivable motive to kill Jennifer Lockmiller? Friesmeier, no, not necessarily. Not necessarily. And he's speaking to someone who has already told him that he thinks that Murray's excluded because he didn't have a motive. He's speaking to the very prosecutor that has already told him he's not interested in Murray. But he doesn't say, no. He says, well, not necessarily. And if Suk had followed up with a more pointed question, perhaps there would have been a clearer answer. Perhaps. And perhaps that's an inference, a rational word to draw. Who would they draw that against? Well— The police officer or would they draw it against the prosecutor? That one against the prosecutor. But there's another rational inference, too, that could be drawn, which is, no, necessarily. No, that's the hedge you say when you don't want— I'm not saying it's a hedge. His words are hedging. He's right. He's trying to avoid revealing the alternate suspects to the grand jury. It's a reasonable interpretation. That's the only standard. And that's malice? If the prosecutor has told him, we're done. We're going forward. We've gone as far as we can. We're charging this guy. Now, you're going to be on the stand during the grand jury proceedings, and I'm going to ask you questions, and I want you to answer them. There's no evidence that any of that happened. You know, the Daniels testimony about he was shut down when he tried to eject, that is disputed. Zucker says that didn't happen. Friesmeier says that didn't happen. John Brown, another investigator, says it doesn't happen. But what did Daniels say? Daniels— The guy who was shut down. Daniels says it didn't happen, but this is summary judgment with conflicting accounts of conversation. True. Mr. Shapiro? Yes. I'd like to ask you about the Supreme Court's instructions to this Court. Yes. The instructions on remand are for the appellate court to examine the defendant's conduct or actions to determine whether they proximately cause the commencement or continuance of the original criminal proceeding. Is that correct? Yes. So, when we're talking about proximate cause, we're talking about cause in fact and legal cause. Is that right? Yes. So, when we talk about cause in fact, I want to hone in on what it is the omissions or the items of undisclosed evidence that are at issue here and to determine whether or not any of those nondisclosures could be considered cause in fact. Because only the items that were not disclosed to the prosecutor could be, even in the equation, is to be considered contributing or causes in fact. So, when we look at what the Supreme Court identified, all of these relate to Murray. Is that right? These nondisclosures? Yes. So, just to cut to the quick of the question, the nondisclosure, the concealment, is the Murray polygraph. Yes. But I disagree with the premise of the question because malicious, excuse me, bad faith or wrongful conduct that is instrumental in causing the prosecution is sufficient. It doesn't have to be concealment. Cause in fact. I want to be clear on this. I want to know what it is that you're arguing here. In order for it to be cause in fact, doesn't it have to be information that was not disclosed to the prosecutor? If the prosecutor already knows about these other items, how could the nondisclosure by the police officer be considered cause in fact? It's a cause in fact because if the police had really investigated Murray, if they had subjected him to the sort of overhears and repeated interrogations over many months that they did to Allen, if they had looked seriously for alternative suspects, if they had tried to talk to everyone that Jennifer encountered in the class that she had immediately before her death, if they had tried to even find at all the men who she encountered in the days before her death, just days, who she exchanged phone numbers with in red lipstick and who were trying to find her and asking her friends about her, if they had done all of that, this would have been a very different decision to indict. And that's why there's cause in fact. If we disagreed with your analysis there and instead considered that the only element or fact that was not disclosed, that being the incomplete polygraph, could be considered in the proximate cause equation here, would that item alone allow for us to send this back to the trial court? Absolutely, because as the central district said in footnote 8, perhaps if the prosecutor knew about the polygraph, he would have reconsidered and realized that Murray was an alternative suspect. So yes, there's cause in fact just then. Thank you. Okay, you have an opportunity to address this again in rebuttal, sir. Mr. D. Giannini. Thank you. Thank you, Your Honor. Thomas DeCiano. DeCiano has been called many different ways, but DeCiano is how I'm going to say it. May I introduce the court counsel? I represent the defendants in this case, and we are before you again to talk about it. It's our position that you got it right the first time. The Supreme Court did not impugn your decision. It clarified some things, but it did nothing to dispute your decision. I'd like to address some of the questions that the court has raised with my opposing counsel. And talk about some of the other issues, and of course address the direction the Supreme Court has given to this court in its decision. And Justice Figman's question about probable cause. The determination for a malicious prosecution claim has to be whether probable cause exists, has to be determined at the point of the charge. If, as counsel suggests, that it could dissipate afterward by changing testimony or something else, the decision then is clearly whether to proceed with the prosecution is the prosecutor's. And what they wanted to do is to eliminate the prosecutor's role throughout this and create a cause of action in which the court looks only at the police, determines whether the police committed some misconduct, completely divorce it from the Supreme Court's decision that whatever you say to the police, they have had to overcome the independence of the prosecutor. And they've been doing that throughout the case. And I think their arguments today in their briefs, particularly their reply brief, shows that probable cause has to be evaluated at the time of the charging because anything after that that may change it is under the control of the prosecutor. Regarding concealment, nothing was concealed from the prosecutors. Now, again, they want to argue that if something was concealed, that indicates bad faith, that indicates a cause of action that should be presented to the jury, regardless of how that would have affected the prosecutor's decision. What they're saying was concealed from Friesmeier's report, his big report, was known to the prosecutor. It was fully known to the prosecutor. The only thing that wasn't known to the prosecutor was the Murray polygraph. And let's be clear, the Murray polygraph was incomplete. It wasn't inconclusive. The prosecutor knew that Murray was supposed to show up for another polygraph and didn't show up, so he knew that much. But this court, I believe in its original opinion, completely dismissed the notion that a missing polygraph could have had any role in Suke's decision. Suke didn't believe that Murray had a motive. He knew everything there was to know about Murray, with the exception of the polygraph, so he knew all the worst about Murray. He knew that he was dealing drugs to Jennifer. He knew that he had a sexual relationship with Jennifer. He knew about the inconsistent statements and then the later correction of an inconsistent statement to the police. He knew about the domestic battery charge. He knew about the steroid abuse. He knew about the order of protection and the other drug sales that he was in. He knew all of that. Now, they say in their brief, and this is the first time they've sort of done this, is that there's kind of impugning Judge Suke's credibility when he testified that none of this would have— I didn't believe Murray had a motive. None of this would have made any difference to me. I didn't even believe what the Supreme Court said was rating material because I didn't believe Murray had a motive. But if the court would indulge my cliché where actions speak louder than words, let's not even look at what Suke said in his deposition. Let's look at what he did. He had Murray on his witness list, knowing about all of this, because Murray was in the apartment at one point in time when a plaintiff knocked Jennifer's door in, and he was going to call Murray as a witness at the criminal trial, and he decided not to because he felt that all of these different criminal charges that were pending against Murray would be used to impeach him, particularly since if there had been some plea taken, there would have been some argument made that he was given this deal to testify. So if that doesn't tell you that Suke didn't believe that Murray had a motive, I don't know what—that Suke did not believe that Murray did not have a motive, I don't know what else could be presented. And no jury, no rational jury, could look at all of this and say, yeah, we believe that Powell Grant would have changed Suke's position, and maybe he would have believed that Murray had a motive, that he had that polygraph, which was incomplete, not even inconclusive. And if you were to put all that he knew about Murray, and that's all the negatives, that polygraph would be up here. It would be out of scale. It would be so outweighed. So regarding concealment, what the plaintiff wants is a cause of action, and the Supreme Court did not endorse this in any way in its decision. They want a cause of action that looks solely at the conduct of the police, lets the jury decide whether the police conducted a good investigation, whether it could be criticized, and leave it at that to then determine the other elements and eliminate the prosecutor's role in it. Well, the Supreme Court didn't do that. The Supreme Court said, whatever misconduct you're going to look at as potentially causing the prosecution, it has to be enough to have overcome the independent judgment of the prosecutor. In that regard, counsel, the Supreme Court is talking again about the significant role assessment. In doing so, it mentioned the Gilbert language, that the participation in the criminal case was so active and positive to amount to advice and cooperation, and then went through the other potential factors. But I want to stick with the advice and cooperation aspect of it. It's an amorphous concept, ill-defined, and in the Supreme Court decision, I don't see any clarification of that. A, is that still a factor that we are to consider, and if so, what does it mean? Well, the question of what it means is undecided, and as we said in our brief, the significant role language and the advice and cooperation language are not self-defined in any way. I guess you will have the first opportunity here to give some meaning to it. But we submit, the Supreme Court went through over 150 years of precedent, and they talked about all these different concepts, advice and cooperation, significant role, that have all been used. And I believe the most reasonable reading of the opinion is that they collapsed it all into proximate cause, and they defined proximate cause as conduct that overcomes an independent judgment of the prosecutor. That's the only thing that... I mean, how else would advice and cooperation play a role in the type of evaluation that has to take place? I would imagine that police provide advice and cooperation in every single prosecution that takes place. If the prosecutor says, you know, I think you should go check out this alibi, or please go interview this witness, that's cooperation. Is that enough to proximately cause a prosecution? No, because that information comes back to the prosecutor, and the prosecutor makes an independent judgment. And that's what happened in this case. Everything that the plaintiffs are complaining about, except that... And I'm going to call it an insignificant piece of evidence, which is the polygraph. The prosecutor knew about everything and decided to go forward with anything. He was convinced of Payne's guilt and didn't believe that Murray had a motive. And the polygraph... I call it insignificant because I understand that the Supreme Court said it was brave material, but it didn't say in and of itself it was brave material. It said it was brave material in connection with the other information about Murray, the prior arrest. That wasn't turned over to the defense. Right. None of it was. The domestic violence, the drug dealing, the drug charges, the steroid use, the border protection, none of that was turned over to the defense. So I would doubt that all of that was turned over and the only item that wasn't turned over was the polygraph. I believe the Supreme Court would have said that piece wasn't a brave violation. Mr. Shapiro pointed out the federal lawsuit. The court referenced the incomplete polygraph in a footnote, indicating that, in response to my questions in regards to proximate cause, that that, in fact, would satisfy the proximate cause element. What did the court say in that case specifically as to the incomplete polygraph? Well, what the court didn't say is that it would have made a difference in Suit's consideration of whether Murray was a viable suspect. What the court said is, had it been disclosed to the trial court judge, along with the other evidence about Murray, the trial court judge may have ruled differently about whether Murray was a viable suspect and whether the defense could present that alternative suspect to the jury as a defense in the criminal case. That's what the federal court said. It didn't say that this proves or this establishes that Judge Silk would have... Had he known about this, he would have considered it to be evidence that Murray had motive. So that footnote is significant to how it would have affected the criminal trial and the ruling of the trial judge on whether that alternative suspect evidence should be admitted, not on how Judge Silk would have viewed it. And I think this court hit it perfectly when it said that. The jury could only speculate that Judge Silk would have seen this differently if he had known about the polygraph, given everything he knew about Murray's background. The question of causation that Justice Harris raised is one that I think really discloses, I think counsel's response to it really discloses what they're trying to establish in this case, and they really are trying to transform the militia prosecution in this state in a way that the Supreme Court did not endorse in any way in its opinion. Counsel talks about how there should have been... The jury should be able to hear in the civil lawsuit that they should have investigated different potential leads. They should have followed up on leads. They should have wired Murray. They should have followed up on the kids that Jennifer was talking to outside the bar. Like flirting with college kids outside of a bar on a college campus is something that's highly suspicious to investigators. But this is the type of cause of action they want. They want to establish a cause of action that focuses on the investigation, allows a jury to decide it's a bad investigation, without any consideration of how it would actually affect the decision of the prosecutor. I submit to the court, and we argue this in our brief, every single criminal case that goes to trial involves a tactic by the defense to attack the investigation. You've probably seen it in transcripts over and over again. Why didn't you investigate this guy? Why didn't you do that? Why didn't you take fingerprints? And it's a legitimate defense tactic. Of course it is. But that cannot be the basis for a cause of action against police for malicious prosecution. That cannot be the basis. And counsel told... They put the transcript from the oral argument in the record. Counsel told... When we said that's what they were trying to establish, counsel told the Supreme Court, no, we're not trying to establish that. We're not trying to establish a cause of action for a defective investigation or a biased investigation is the way they're trying it now. But that's exactly what they're trying to do. That's exactly what they're trying to do. And that's the only way they can make a cause of action out of this case because this won't be the case in every situation, but in this situation, Suke was so personally and closely involved that he knew about everything. They criticized Friesmeier because of how he testified. But he testified... He answered the questions that were asked. And, you know, he says he concealed that at the trial. If you look at the trial testimony, Friesmeier answered the questions that were given. You don't... A trial witness, a police officer who testifies at a trial, doesn't make statements or offer testimony that isn't asked of him. All he did was answer the questions. So he didn't conceal anything at the trial. The grand jury testimony, he answered the questions. And the not necessarily comment isn't incorrect. None of them considered Murray... First of all, Friesmeier didn't know anything about Murray. He didn't know the first thing of him. He didn't investigate Murray. He didn't know about the polygraph. Tony Daniels was the investigator who investigated Murray. So to say that Friesmeier should have piped up when the prosecutor asked him the question and said, well, we've got this Murray guy who might be another suspect, is a mischaracterization of that as some type of concealment. But nevertheless, he said not necessarily because there were other people they were looking at. But again, as Justice Necht said, he's answering the questions that the prosecutor is giving to him. And he's answering them regardless of his ability. I don't know how you can call that concealment. And you certainly cannot call it concealment that would have overcome the independent judgment of the prosecutor. I think that this court actually, the first time this was around, you did consider a proximate cause analysis. You didn't use that buzzword. You didn't look at the factors in the same way that the Supreme Court did. The language you used was a pressured or exerted influence or made knowing misstatements. And the Supreme Court expanded that to include Supreme Courts that exerted pressure on the prosecutors knowingly provided misinformation to him or her, or bad faith conduct, bad faith conduct, instrumental in the initiation of the prosecution. So what they did was they expanded what the factors that this court looked at the first time around. But that doesn't mean this court wasn't looking for a causal link to make its decision. I believe the court did look for a causal link to make its decision and didn't find one because there wasn't one. Judge Suk knew all the negatives and the positives of this prosecution. They keep arguing it was a flimsy evidence that led to the conviction. Maybe that's true and maybe that's not true. But Judge Suk knew about it. He knew exactly what he was doing. Did the testimony show that the state's attorney was also present when the words were spoken that, you know, we think this is the right guy, we're going to go ahead and prosecute? That's correct. State's attorney Rayner was there. State's attorney Rayner testified in his deposition that he made the decision which would be the case. And Judge Suk testified that he agreed with the decision and he is the one who, according to Daniels, told Daniels that, you know, we're going to go forward. Now, I disagree that the other people who were present at that meeting disputed that Suk said that. I don't believe they were ever asked that question. They may have asked the question whether anybody opposed the decision, and I don't believe they said anybody did. But I don't know that that's a contradiction of Tony Daniels' testimony. Plus, I think Tony Daniels' testimony has to be credited since he's a non-party in the case. And I imagine there's no argument that he has any motives to say something that wasn't accurate. So, in terms of the decision to go forward at that meeting, it wasn't judged. It wasn't just the Assistant State's Attorney Suk. It was also State's attorney Rayner who was involved. I want to make just a few comments quickly about I only have a few minutes left about some of the policy issues here. I think that the amicus briefs cover it very well. But the concerns that police organizations and the prosecutorial group that joined in the amicus brief have is a legitimate one. They are asking for a very broad cause of action. One of the things the Supreme Court did in looking at 150 years of precedent was reinforce that only this cause of action exists under narrow circumstances. And it's a disfavored cause of action. The Supreme Court, going through all of the precedent going back 150 years, came to that conclusion. Or, I should say, did not dispute that conclusion at all. So, Your Honors, we are asking that you arrive at the same conclusion and affirm the Circuit Court's decision. Okay. Thank you. Mr. Shapiro? Mr. Shapiro, I know you have a lot that you probably want to say in a brief time, but I have a couple of questions. What does having a fan placed over the victim's head have to do with anything? Exactly nothing. But you cited it. Well, I cited it as the basis for probable cause. That's why. Well, how about the scissors? Same. So those things come from the prosecution, not you asserting that those are reasons that we should not hold. Oh, that's one of the things that's so crazy about this case, Your Honor. What about the powerful business? That comes from our extremely experienced expert in crime scheme. That's his opinion. Did he know that the plaintiff broke down the door twice to the apartment? Oh, yeah, he read the file. Okay. So those, that's just an illustration of the malice, the thing like, oh, scissors, fan, must be someone new or must be out. That's an example of the malice here. But what we just heard, I think, from opposing counsel, was a call for a radical nullification of the Supreme Court's opinion. I want to be clear that when the Circuit Court's decision in this case was the first time in the history of the Illinois judiciary that it has ever happened that the principal detectives, in a case that resulted in a wrongful conviction, were found not to satisfy the commensurate continued element. And now after the reversal, Say that again. We're not, we're found to what? Not to satisfy the commensurate continued element. The principal detectives in a case that results in a wrongful conviction. What other cases are there in the state that dealt with that? I mean, any number that are cited in our brief. You mean the federal cases? The Bunch and Burge cases, yes. Well, I'm talking about. There's a whole string set in our papers about that. And essentially, Mr. Bisciotti wants to vee out of the Supreme Court opinion the recognition that bad faith misconduct instrumental is a separate category from concealment and nullify. We have to nullify the Supreme Court's recognition that prosecutors necessarily defer to the investigative duties of the public police. And therefore, it follows as a direct consequence that a bad faith investigation can result in an effect on independent judgment. There was no real answer to like, if the police had conducted a good faith investigation, of course the outcome and the decision to indict could be different. And we were also told that the court shouldn't follow the advice or cooperation test, which is also in the Supreme Court's opinion. And there's been no answer. There's been no answer to the point about why did Friesmeier omit the one exculpatory time trial when there's meticulous detail about everything else in his report. Why did the polygraph disappear? This is evidence of malice. And this is a summary judgment case. There was a call really to resolve a lot of disputed issues of material fact. The conservative path in a tough case is for the court to stay its hand and to recognize that these are issues for a jury to consider. I have some questions. I want to ask you and give you an opportunity, if you still need it, to proceed after I'm done. My understanding is that, going back to what we talked about probable cause, it exists when the police or the prosecutor's office has reasonable grounds to believe that, one, a crime has been committed and, two, a particular person has committed it. Is that correct? Yes. Okay. It seems to me that's a rather dramatically lower standard than, for instance, proof beyond a reasonable doubt. Do you agree? I agree. It's a lower standard than a reasonable doubt, yes. Going back to this case and dealing with the probable cause issue, in this case, the only— what the Supreme Court said when it reversed the conviction in 2008 and sent it back is for a Brady violation with regard to Mr. Murray that you've already made reference to. But the trial court denied the motion to direct the verdict at the close of the state's evidence, and none of that addressed whether there was sufficiency of the Brady violation and wouldn't address the sufficiency of the evidence at that point. The jury found him guilty beyond a reasonable doubt as well. And when the Supreme Court reversed the conviction for the Brady violation, didn't the Supreme Court need to assess whether or not there was sufficient evidence to justify sending this case back and permitting the state to retry the defendant? I believe what the Supreme Court said is that it's not reaching that issue. That's my recollection. You mean the Supreme Court— isn't it required? Aren't we all, courts of review, required to reverse a conviction for reasons unrelated to the sufficiency of the evidence to, in part, according to the U.S. Supreme Court, in due process clause, say, and by the way, there's enough evidence here that we're going to permit the state to go back and try this guy again? Again, my recollection is that the Supreme Court says that they're not going to address that. I could be wrong about that, but more to the— I think the point here is that there are any— it happens all the time that a conviction gets thrown out, and the prosecutor drops the charges, and there's a malicious prosecution suit. Well, I'm not sure it happens all the time. I don't pretend to know what's going on in federal courts, so I'm not sure I want to know what's going on in federal courts. But this is a state court, and my question is, is there any state court precedent, Illinois precedent, where trial judges deny the motion to direct the verdict, a jury's convicted an offendant, beyond reasonable doubt, and no court of review has said, by the way, the evidence was not sufficient, where, on a later analysis on the same evidence, it's been found that there was insufficient probable cause to bring the charge in the first place? Is there any precedent for such a thing? And it's hard for me to imagine it. I'm not sure there's precedent for this probable cause. Yes. Going back, you see, again, when Sup filed these charges, he made a determination to throw out the charges. Right. That means they had to decide that there are reasonable grounds to believe that a murder was committed and Allen Beeman committed it. Right. That's the criteria. Yeah. Subsequently, trial court finds there's enough evidence to go to the jury. The jury finds him guilty beyond reasonable doubt. No court of review has said that the evidence was not sufficient to sustain the conviction, and yet we're here saying there wasn't enough evidence for the prosecutor to make a determination of probable cause, when essentially when they made that determination, that's all the evidence they had that ultimately went to trial, wasn't it? They had no new evidence past this point that really incriminated the defendant. Which past what point? Past the point that they filed charges. They acquired no new significant evidence at all. Isn't that correct? Inculpating him, yes. Right. Okay. So the point being, that's the point, starting with my very first question, that you're asking us to conclude that there was insufficient evidence to support probable cause finding for the charge to be made by the ultimate determiners, Reinhard and Sick, who were the state's attorney and assistant. Right. Yet, on the same evidence, the same record, nothing more post-determination to file charges, and that same evidence, trial court denies motions for a directed verdict, a jury finds beyond a reasonable doubt, the Supreme Court gets this case, finds it for any violation, but doesn't say, by the way, the evidence was not sufficient for you, state, to go back and retry them again, and you still are telling us insufficient evidence of probable cause? Yes. I mean, it is, and I'm sorry that I don't have a particular case at hand right now. Isn't there a problem with this? I mean, just logically, as far as how, and, you know, I'm accepting your word that the Supreme Court, in the first case, didn't address this, but don't they have to, aren't we obligated, we as a court of review, and isn't it sub salientio, perhaps, that they said it was a decision of the state's attorney years later not to retry them again, but there was no bar to the state's attorney retrying them, which would be the case, would it not, if the evidence were not sufficient for even a probable cause determination? What I can say with confidence is that, and I'm sorry that I don't have a particular citation at hand, but that malicious prosecution civil cases go forward when, even when there's not a ruling by the appellate court finding a lack of sufficiency, in other words, where the prosecutor makes the decision not to retry the case after it gets thrown out, and the consequence, the consequence of that not being the case, is that unless there were a finding of no sufficient evidence, no one in a wrongful conviction case would ever have a cause of action, no matter how long they spent in the court. Well, counsel, that's a policy argument to be addressed in the legislature and the Supreme Court. I'm basing it on the law. The law says, my very first question, the law says if there's probable cause to bring this charge, the malicious prosecution charge or complaint fails. Isn't that right? Maybe that's too strict a standard, but, you know, you can take it across the street. If there's no probable cause, if there is probable cause to bring this charge, you've got no cause of action. That is true, that a rational juror has to be able to find the absence of probable cause, but from a legal standpoint, there's a lot of precedent that would have to be overturned in order to reach the conclusion. Any Illinois precedent, or are we talking about more footnotes from federal district courts? I'm pretty sure I'm talking about both. Well, did you cite any Illinois precedent to this effect in your briefs? I'm sure that I did. I'm sure that I did. I'm sure that there are, I'm nearly certain that there are Illinois cases in our brief where that could be used for other purposes. As I've said, I took up a lot of your time, and I'm going to give you another minute or so because of that to, if there's something else you wanted to say in rebuttal. I did want to say a little bit more on the commensal continued prompt, because the Supreme Court's instructions specifically say that the court has to address that question on the commensal continued element. And at the end of the day, the Supreme Court said that what is required is a significant role. All of this talk about will the prosecutor have a role, too, or even the dominant role, it doesn't have to be the principal role or the dominant role. It is just a significant role. And you would have to nullify the Supreme Court's recognition that prosecutors defer to the investigative duties of the police if it wants to arrive at the conclusion that an investigation conducted in bad faith, even if there were concealment, and there really was concealment, as I said, you would have to nullify that recognition that a bad faith investigation can result in a wrongful prosecution. And at the end of the day, this is a summary judgment case. It is about what a rational juror could infer. Perhaps a rational juror could infer that even if a good faith investigation had been conducted, Alan Beaman still would have been indicted. But that is not the only rational inference that could be drawn from the record here. Alan Beaman has been fighting for a fair trial his whole life. This court should give him that. Thank you. Thank you, counsel. Thank you, Mr. Van Lander. The advisement will be in recess for a few moments before the next case.